CONNELL, *Plaintiff in Error*, v. THE WESTERN UNION TELEGRAPH COMPANY.

### Division Two, May 16, 1893.

**Telegram**: DELAY IN DELIVERY: DAMAGES. Damages cannot be recovered of a telegraph company for mental suffering and pain, caused by its neglect to transmit and deliver a *social* message promptly, although it is informed by its contents that great mental suffering and pain will naturally result from its failure to do so.

*Error to Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Wm. S. Shirk* for plaintiff in error.

(1) The court erred in sustaining defendant's motion to strike out that part of plaintiff's petition alleging mental and physical pain, distress and prostration, as the result of defendant's failure to promptly transmit and deliver the message. The defendant contracted to transmit and deliver the message promptly; it was a message for the benefit of the addresse; it failed to comply with its contract; and it is liable: *first*, for the amount paid for its transmission; and, *second*, for any mental pain, agony and distress caused by its failure as an element of actual damages. Shearman and Redfield on Negligence, sec. 756; 1 Sedgwick on Damages [8 Ed.] secs. 45, 46, 47; *Stuart v. Tel. Co.*, 66 Tex. 580; s. c., 18 S. W. Rep. 351; *Tel. Co. v. Nations*, 18 S. W. Rep. 709; *Tel. Co. v. Richardson*, 79 Tex. 649; *Tel. Co. v. Adams*, 75 Tex. 531; *Tel. Co. v. Simpson*, 73 Tex. 422; *Potts v. Tel. Co.*, 18 S. W. Rep. 604; *Wadsworth v. Tel. Co.*, 2 Pick. (86 Tenn.) 695; s. c., 8 S. W. Rep., 574; *Tel. Co. v. Fatman*, 73 Ga. 285; *Tel. Co. v. Reynolds*, 77 Va. 173; *Tel. Co. Henderson*, 89 Ala. 510; s. c., 7 So. Rep. 419; *Beasely v. Tel. Co.*, 39 Fed. Rep. 181; *Young v. Tel. Co.*, 107 N. C. 370; s. c., 11 S. E. Rep. 1044; *Thompson v. Tel. Co.*, 107 N. C. 449; s. c., 13 S. E. Rep. 427; *Reese v. Tel. Co.*, 123 Ind. 294; s. c., 24 N. E. Rep. 163; *Chapman v. Tel. Co.*, 13 S. W. Rep. (Ky.) 880. (2) Mental anguish and pain is held to be a proper element of damages in the following actions: breach of promise of marriage, *Bird v. Thompson*, 96 Mo. 424; *Burnam v. Cornwell*, 63 Am. Dec., 545, and authorities cited in note; assault and battery, *West v. Thomas*, 22 Mo. 344; *Craker v. Railroad*, 36 Wis. 657 (in this case the assault was a gentle kiss); actions for malicious prosecution, *Fisher v. Hamilton*, 49 Ind. 341; false imprisonment, *Stewart*

*v. Maddox*, 65 Ind 51; illegal issue of an attachment, *Byrne v. Gardner*, 33 La. Ann. 6; for libel and slander, *Terwilligen v. Wands*, 17 N. Y. 54; forcible abduction of daughter, *McGee v. Holland*, 27 N. J. L. 86; enticing away a daughter, *Stone v. Heywood*, 7 Allen, 118; and, for seduction, *Weaver v. Bachert*, 44 Am. Dec., 178, and authorities collected in note. Then why not in cases of this kind? *Wadsworth v. Tel. Co.*, 86 Tenn. 695. (3) A telegraph company is bound to take notice, from the contents of a telegram delivered to them, whether it concerns a near relative, and is important, and that a failure to transmit and deliver it would naturally cause mental pain, anxiety and distress. *Tel. Co. v. Adams*, 76 Tex. 531; *Tel. Co. v. Moore*, 12 S. W. Rep. 949; *Mabry v. Tel. Co.*, 51 Hun (N. Y.), 126; *Pepper v. Tel. Co.*, 11 S. W. Rep. 783, and other authorities cited to point 1, *supra*. (4) And the addressee, for whose benefit the telegram was sent, may recover, particularly if he has repaid the sender the price of transmission. *Wadsworth v. Tel. Co.*, 86 Tenn. 695; s. c., 21 American & English Corporation Cases, 161, and note on pages 181 and 182; *West v. Tel. Co.*, 17 Pac. Rep. 807; *Markel v. Tel. Co.*, 19 Mo. App. 80.

*Karnes, Holmes & Krauthoff* with *Charles E. Yeater* and *G. H. Fearons* for defendant in error.

(1) Mental suffering alone, unconnected with any other injury, will not support an action. 3 Sutherland on Damages, 715; *Trigg v. Railroad*, 74 Mo. 147. And this is the rule announced by a multitude of authorities. *Dorrah v. Railroad*, 65 Miss. 14; *Johnson v. Wells*, 6 Nev. 224; *Wyman v. Leavitt*, 71 Me. 227; *Boyce v. Danville*, 53 Vt. 183; *Canning v. Williamstown*, 1 Cush. 451; *Walsh v. Railroad*, 42 Wis. 23;

*Paine v. Railroad*, 45 Ia. 569; *Railroad v. Stables*, 62
Ill. 313; *Freese v. Tripp*, 70 Ill. 496; *Joch v. Dankewardt*,
85 Ill. 331; *Salina v. Trosper*, 27 Kan. 544; *Cowden v.
Wright*, 24 Wend. 429; *Railroad v. Packer*, 9 Bush.
455; *Keyes v. Railroad*, 36 Minn. 290; *Clinton v. Laning*,
61 Mich. 355; *Hunt v. Watton*, T. Raymond, 259;
*Flemington v. Smithers*, 2 C. & P. 292; *Kennon v. Gilmer*,
131 U. S. 22; 2 Greenleaf on Evidence, sec. 267; 2
Wood Rys., pp. 1238, 1239; 1 Harris on Corporation
Damages, sec. 223; Pierce on Railroads [Ed. 1881]
302. (2) The rule was declared to be in full force and
applied in an action against a railroad company in a
very recent case, in which the concurrence of Mr.
Chief Justice FULLER was had. *Wilcox v. Railroad*,
52 Fed. Rep. 264. The same rule prevails where dam-
ages are claimed for mere mental effects, such as fright,
annoyance and the like. *Ewing v. Railroad*, 23 Atl.
Rep. (Pa. 1892) 340; *Railroad v. McGinnis*, 46 Kan.
109, 113; *Comm'rs v. Coultas*, L. R. 13 App. Cas. 222, 225
(where it was said that the principle involved was the
same as in cases of mental anguish). (3) And applies
to actions against telegraph companies. Gray on Com.
by Telegraph, p. 147; *Tel. Co. v. Hamilton*, 50 Ind.
181; *Logan v. Tel. Co.*, 84 Ill. 468; *Blackeney v. Tel.
Co.*, 12 Cent. L. J. 147; *Russell v. Tel. Co.*, 3 Dak.
315; *West v. Tel. Co.*, 39 Kan. 93; *Burnett v. Tel. Co.*,
39 Mo. App. 599.

GANNT, P. J.—This is an action for damages for
the negligence of defendant in failing to deliver to
plaintiff the following telegraphic message sent to him
by his wife:

"SEDALIA, MISSOURI, December 13, 1889.
"*To Matt Connell, Soldiers' Home, Leavenworth, Kansas.*
"Your child is dying.          MARY."

The plaintiff alleged that his wife paid the customary charge, fifty cents, for its transmission, and that he had refunded that sum to her.

Plaintiff then alleges that his child died on the twenty-fourth day of December, 1889, "and that if said message had been transmitted and delivered with any degree of diligence or promptness whatever, he would have been able to be present with his said child during its last sickness and at its death; and that by reason of the great negligence and carelessness of defendant in failing to deliver said message, and of his being thereby deprived of being with his said child during its last sickness and at its death, he lost not only the fifty cents paid for sending said message, but also suffered great anguish and pain of mind and body, and was physically and mentally prostrated when he learned that his child had died and been buried without knowledge on his part of its sickness and death."

He alleges that he was an inmate of the soldiers' home from December 13, 1889, continuously, till February 21, 1890, and by the slightest diligence he could have been found. He alleges further that he is damaged in the sum of five thousand dollars, for which he prays judgment.

On motion of defendant, the circuit court struck out of the petition, the words, "*But also suffered great anguish and pain of mind and body, and was physically and mentally prostrated, when he learned that his child had died and had been buried without knowledge. on his part of its sickness and death.*" This left the action pending for the fifty cents only, and plaintiff declining to amend, the court sustained another motion to dismiss for want of jurisdiction of the subject matter of the action.

The sole question discussed by the appellant in this case is this: "Where a telegraph company is

advised by the contents of a message that great mental suffering and pain will naturally result from its neglect to transmit and deliver the message promptly, can damages be recovered by the sendee for such mental agony and distress, caused by a failure to promptly transmit and deliver?"

The proposition, it will be observed, relates simply to damages arising from a breach of contract.

Prior to this time there has been but one opinion expressed in the decisions of this court, and that is clearly adverse to the contention of the appellant, and this is not questioned by the able counsel who represents the appellant, but he urges that inasmuch as telegraphy is of comparatively recent origin we should, in view of the function it performs, make an exception in the construction of the contracts made by those engaged in it and the damages which flow from a breach thereof. That an action for mental anguish disconnected with physical injury, for the breach of a contract, could not be maintained at common law, with the single exception of the breach of a marriage contract, we think is abundantly established. Wood's Mayne on Damages, 75; *Lynch v. Knight*, 9 House Lords, 577; *Walsh v. Railroad*, 42 Wis. 23; *Wyman v. Leavitt*, 71 Me. 227; *Wyman v. Leavitt*, 36 Am. Rep. 303.

The subject came under review in this court in *Trigg v. Railroad*, 74 Mo. 147. In that case, a lady, with two little children, was carried beyond the station to which she was travelling. It was not claimed that any indignity was offered, or that she suffered personal injury. The trial court instructed that the jury might award her damages for the anxiety and suspense of mind suffered in consequence of the delay in reaching her destination. This court, in reversing the cause, said: "The instruction as to

the measure of damages was erroneous. Neither the anxiety and suspense of mind suffered by the plaintiff in consequence of the delay, nor the effect upon her health, nor the danger to which she was exposed in consequence of the train being stopped an insufficient length of time, were proper elements of damage in this case, *as no personal injury* was received by the plaintiff and no circumstances of aggravation attended the wrongful act complained of. If the anxiety and suspense of mind suffered by the plaintiff in consequence of the delay in this case is a ground of recovery, similar suspense and anxiety of mind would be an equally good ground of recovery in a case where a railroad train should wrongfully stop to take on a passenger. The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity.'" Citing Pierce on Railroads [Ed. 1881] 302; *Railroad v. Birney*, 71 Ill. 391.

The authority of this case has never been questioned by the courts of this state, to our knowledge. The rule announced was in strict harmony with that of the courts of last resort in our sister states, until in 1881 the supreme court of Texas, in *So Relle v. Tel. Co.*, 55 Tex. 308, announced the doctrine that the sender of a social telegram could recover for the mental anguish caused by delay in its delivery.

The authorities relied upon by the supreme court of Texas in that case were actions for physical injuries in which the mental agony formed an inseparable part, a doctrine never questioned in this state since *Porter v. Railroad*, 71 Mo. 66. The learned commissioner who prepared the opinion did quote a suggestion of the authors of Shearman and Redfield on

Negligence to the effect, that they thought such an action ought to lie, but they did not claim that any court in this country or England had previously sustained their view. The Texas case has been followed in that state in a great number of cases, and has been adopted in Indiana, North Carolina, Kentucky, Alabama, and Tennessee.

On the other hand, this new departure has been vigorously assailed and denied by the supreme courts of Mississippi, Georgia, Kansas and in Dakota, and in a most luminous dissenting opinion by Judge LURTON, of the supreme court of Tennessee, now judge of the United States circuit court for the sixth circuit, in which FOLKES, judge, concurred. The majority of the supreme court of Tennessee do not go to the length contended for by the appellant here. The majority lay great stress upon the fact that by virtue of a statute in Tennessee, a cause of action is given to the aggrieved party for damages for failure to deliver any message. Hence they argue that as the party has the right to some damages by virtue of the statute, they conclude they may add the anguish of mind as an element. It is impossible to escape the feeling that the very able judges were resorting to a fiction to justify them in supporting the action. The case of *So Relle v. Tel. Co.*, 55 Tex. 310, has been nowhere more flatly repudiated than by the supreme court of Texas itself in *Railroad v. Levy*, 59 Tex. 563.

Judge STAYTON, in an able and lucid discussion of the authorities, demonstrates that "the cases in which damages have been allowed for mental distress was the incident to a bodily injury suffered by the distressed person, or cases of injury to reputation or property in which pecuniary damage was shown, or the act such that the law presumes some damage, however slight, from the act complained of. They are not cases in

which the bodily injury or other wrong was suffered by one person and the mental distress by another.''

The reasoning of the supreme court of Tennessee, that because the code gave an action for some damages that opened the way to add damages for mental distress, is, we think, at complete variance with our own decisions. In this state we have a damage act which gives a right of action where death has resulted, and similar statutes exists in most of the states.

The construction placed upon these statutes has been that no relative, save those named the statute, can recover at all, and no recovery as a *solatium* for mutual suffering is allowed where not expressly given by the statute. Field on Damages, 498; *Porter v. Railroad*, 71 Mo. 66; *Parsons v. Railroad*, 94 Mo. 286; *Schaub v. Railroad*, 106 Mo. 74.

But it is said damages for injury to the feelings have always been allowed in actions founded upon a breach of promise to marry, and this is true in this as in other states. *Wilbur v. Johnson*, 58 Mo. 600; *Bird v. Thompson*, 96 Mo. 424; but it has always been regarded as an exception to the rule. In this action, plaintiff's pecuniary loss forms an important element. The action is of common law origin, and at common law the husband on marriage became liable for the wife's debts, and for support in a manner and style commensurate with his own social standing, and evidence of his station in life and *financial condition has always been admitted*. *Wilbur v. Johnson, supra*. As was well said by COOPER, judge, in *Rogers v. Tel. Co.*, 68 Miss. 748, ''this action, though in form one for the breach of contract, partakes in several features of the characteristics of an action for the willful tort, and, though the damages recoverable for the plaintiff for mental suffering are spoken of as compensatory, the fervent language of the courts indicate how shadowy is the

line that separates them from those strictly pecuniary.''
*Harrison v. Swift*, 13 Allen, 144; *Kurtz v. Frank*, 76
Ind. 595; *Thorn v. Knapp*, 42 N. Y. 475; *Coryell v.
Colbaugh*, 1 N. J. L. 77. ''Especially those cases in
which evidence of seduction is admitted to ascertain
the damages.''

''So much, indeed, does the motive of the defend-
ant enter into the question of damages, that in *Johnson
v. Jenkins*, 24 N. Y. 252, he (the defendant) was per-
mitted to give in evidence in mitigation of damages,
the fact that he refused to consummate the marriage
because of the settled opposition of his mother, who
was in infirm health.''

These considerations sufficiently indicate the rea-
sons that actuated the courts to make this exception.
Few precedents for this action will be found where the
defendant was impecunious. The learned counsel has
collected various other cases in which mental anguish
was recognized as an element of damage, and concludes
with the query, if allowed in these, why not in this
action?

Let us consider these in the order of his brief.

Assault and battery. Under this head is cited the
case of *Craker v. Railway*, 36 Wis. 657. In that case
the conductor of a train seized upon the moment
when the other employes were absent from the car, to
take improper liberties with a lady passenger, the evi-
dence showing that he placed his arm around her and,
against her vehement protests, kissed her. It was a
clear physical violation of her person, which the courts
have ever held constituted an assault and battery, and
actionable. The law redresses such a wrong in its
initial stages. The protection of the person has ever
been an object of great solicitude to the common law.
The present ability of actual violence often justifies
recourse to extreme measures in preventing a consum-

mation of threatened wrong to the person. The cases cited under this head clearly add no weight to plaintiff's claim.

The cases of malicious prosecution and false imprisonment come under that general class of willful wrong to the person, affecting the liberty, character, reputation, personal security and domestic relations.

Judge LUMPKIN in *Chapman v. Telegraph Co.*, 39 American and English Corporation Cases, 567, and 15 S. E. Rep. 901, disposes of the argument attempted to be drawn from this class as follows: "In an action for wrongful attachment, on the ground that the defendant was about to dispose of his property with intent to deprive his creditors, it was held (by a divided court) that the mortification was a part of the actual damages. *Byrne v. Gardner*, 33 La. Ann. 6. Of course it was a case of serious injury to the plaintiff's business standing, and, therefore, even if sound, is no authority on the present question. In an action for false imprisonment, or for malicious arrest and prosecution, mental anguish has been held a proper subject for compensatory damages. *Fisher v. Hamilton*, 49 Ind. 341; *Stewart v. Maddox*, 63 Ind. 51; *Coleman v. Allen*, 79 Ga. 637. Of course such injuries are essentially willful, and, besides, are violations of the great right of personal security or personal liberty."

As to the action of seduction, every lawyer knows that proof of some service by the daughter has been invariably required to sustain it, and the same rule is rigidly adhered to in *Magee v. Holland*, 27 N. J. L. 86, to which we are cited by counsel, for the forcible abduction of a daughter.

In the case of enticing away a daughter, we are referred to *Stowe v. Heywood*, 7 Allen, 118. The court permitted damages for mental suffering on the express ground, that it was a willful injury and declined to say

whether such damages could ever be recovered for negligence alone, as in the case at bar. This case illustrates the greatest difficulty in estimating damages for mental suffering. Judge METCALF says: "Mental suffering * * * cannot be measured aright by outward manifestations; for there may be a show of great distress where little or none. is felt. And great distress may be concealed and borne in silence with an apparently quiet mind. *Ab inquieto sæpe simulatur quies.*

And we nowhere find that any other evidence of mental suffering, besides that of the injury which was the alleged cause of action, was ever before admitted." The court reversed the case because the trial court permitted evidence tending to show plaintiff suffered from pain and anxiety of mind.

It is hardly necessary to add that in a case of libel or slander, if the words are not actionable *per se*, special damages must be alleged and proved. When they are actionable *per se*, they are construed, because of their evident tendency to degrade the citizen in the estimation of his neighbors, and in both cases they are malicious.

We have now gone through the list and we find in none of them any reason for adopting the rule that for the mere negligent failure to comply with a contract, damages may be recovered on the sole ground of injured feelings, when the plaintiff has suffered no physical injury. The law up to this time has essayed to protect the person and property of the individual. All the cases cited are based upon this principle. Reputation is included in the person. *Johnson v. Bradstreet Co.*, 87 Ga. 79.

The damages claimed in this action cannot be allowed as exemplary damages. The Texas court in one case did so hold, but afterwards repudiated it. *Stuart v. Tel. Co.*, 66 Texas, 580.

But we do not think that the courts of England and of this country, prior to 1881, were rejecting actions like this on a mere arbitrary assumption unsustained by reason. A doctrine which has passed so long unchallenged by the great jurists who have adorned the bench of our state and federal courts, is not to be lightly discarded at the behest of ingenious and able counsel.

The law is and ought to be more stable than this. It has long been the boast of common law writers, that the common law was a system founded upon reason, and one of its maxims has ever been, that when the reason upon which a law was based ceased, the law itself ceased. Speaking for ourselves, we are satisfied that the common law denying an action for mental distress alone was founded upon the best of reason and an enlightened public policy.

And we question if the real reasons were ever more clearly and satisfactorily stated than by Judge Lurton, which we adopt:

"The reason why an independant action for such damages cannot and ought not to be sustained is found in the remoteness of such damages, and in the metaphysical character of such an injury considered apart from physical pain. Such injuries are generally more sentimental than substantial. Depending largely upon physical and nervous condition, the suffering of one under precisely the same circumstances would be no test of the suffering of another. Vague and shadowy, there is no possible standard by which such an injury can be justly compensated or even approximately measured. Easily simulated and impossible to disprove, it falls within all the objections to speculative damages, which are universally excluded, because of their uncertain character. That damages so imaginary, so metaphysical, so sentimental, shall be ascertained and assessed by a jury with *justness*, not by way of punish-

ment to the defendant but as mere compensation to the plaintiff, is not to be expected. That the grief natural to the death of a loved relative *shall be separated* from the added grief and anguish resulting from delayed information of such mortal illness or death, and compensation given for the latter only, is the task imposed by the law, as determined by the majority. * * * It is legitimate to consider the evils to which such a precedent logically leads. Upon what sound legal considerations can this court refuse to award damages for injury to the feelings, mental distress and humiliation where such injury results from the breach of any contract? Take the case of a debtor who agrees to return the money borrowed on a certain day, who breaches his agreement willfully with knowledge that such breach on his part will probably result in the financial ruin and dishonor of his disappointed creditor. Why shall not such a debtor, in addition to the debt and the interest, also compensate his creditor for this ruin, or at least for his mental sufferings? * * * Upon what principle can we longer refuse to entertain an action for injured feelings consequent upon the use of abusive and defamatory language not charging a crime or resulting in special pecuniary damages? Mental distress is or may be in some cases as real as bodily pain, and it as certainly results from language not amounting to an imputation of crime, yet such actions have always been dismissed as not authorized by the law as it has come down to us, and as it has been for all time administered."

Why, if this rule is to become the law of this state in regard to this contract, shall it not apply to all disappointments and mental sufferings caused by delays in railroad trains. Telegraph companies are common carriers, so are railroad companies, and yet this court in the *Trigg case* held the company not liable

for mental anguish as an independent cause of action for a mere act of negligence.

A similar conclusion was also reached in the United States circuit court, for the fourth circuit, in *Wilcox v. Railroad*, 52 Fed. Rep. 264, where the plaintiff made a special contract for a train to take him to the bedside of a sick parent. The court held that the trouble of mind caused by the delay at a railroad station could could not be made the basis of an action, saying: "But we know of no decided case which holds that mental pain alone, unattended by injury to the person, caused by simple negligence, can sustain an action. The plaintiff was the subject of two mental pains, one for the condition of the sick person, the other, from the delay at the station, the latter only being the subject of this action. "It cannot be pretended that damages from the latter cause of 'anxiety' and 'suspense,' uncertain, indefinite, undefinable, unascertainable, dependent so largely on the peculiar temperament of the person suffering the delay, was in the contemplation of the defendant when it entered into the contract." *Griffin v. Colver*, 16 N. Y. 489; *Telegraph Co. v. Hall*, 124 U. S. 444. But as before said, if we establish the rule as to one common carrier or private person, with what sort of consistency can we refuse to extend it to all? The courts of Texas have already spoken of a similar case as "intolerable litigation."

We see no reason for making this innovation or exception. The legislature has imposed a penalty for each infraction of its duty in delaying a message, and it seems very clear to us that if it is to become the policy of the state to adopt this new rule, the legislature and not this court should do it.

The common law has always attempted to deal with the citizen and his rights and wrongs in a practi-

cal way, and the declared object of awarding damages is to give compensation for pecuniary loss. The right in a civil action to inflict punishment by way of punitory damages has been ably controverted. The allowance of damages for wounded feelings, when they are the concomitant, or result of a physical injury is placed rightfully on the ground that the mind is as much a part of the body as the bones and muscles and an injury to the body included the whole and its effects were not separable, but the experience of every judge and lawyer teaches him how unsatisfactory in these personal injury cases are the verdicts of juries. They are utterly inconsistent, and the courts do not attempt to justify these inconsistencies upon any other theory than that it is the sole province of the jury to fix the amount. The result is that in nearly appeal that reaches this court, one ground for reversal is the excessive damage awarded. And the right of this court to interfere at all on this ground is seriously challenged. It is no uncommon thing to have the appellee voluntarily enter a *remittitur* to save his verdict from the charge of passion or prejudice.

Under the circumstances, is it wise to venture upon the far more speculative field of mental anguish without guide and without compass? We think not. We have examined the cases in the courts of Kentucky, Indiana, Tennessee, Alabama and North Carolina. They all are based upon the *So Relle case* in 55 Tex., which we have shown stands upon no previous adjudication, but is opposed by the *Levy case* in 59 Tex. which to our minds completely refutes it. The cases holding this view are *Stuart v. Tel Co.*, 66 Tex. 580; *Railroad v. Wilson*, 69 Tex. 739; *Tel Co. v. Cooper*, 71 Tex. 507; *Tel. Co. v. Broesche*, 72 Tex. 654; *Tel Co. v. Simpson*, 73 Tex. 423; *Tel. Co. v. Adams*, 75 Tex.

531; *Wadsworth v. Tel. Co.*, 86 Tenn. 695; *Reese v. Tel. |Co.* 123 Ind. 294; *Beasley v. Tel. Co.*, 39 Fed. Rep. 181; *Tel. Co. v. Henderson*, 89 Ala. 510; *Thompson v. Tel. Co.*, 106 N. C. 549; *Chapman v. Tel. Co.*, 13 S. W. Rep. 880; *Young v. Tel. Co.*, 107 N. C. 370; Thompson on Electricity, sec. 378, and cases cited.

The cases opposing this view are notably the dissenting opinion of Judge Lurton in 86 Tenn. 695; *Chapman v. Tel. Co.*, 15 S. E. Rep. 901; *Chapman v. Tel. Co..* 39 American and English Corporation Cases, 567, in which Judge Lumpkin of the supreme court of Georgia reviews all the cases in a most admirable tone and with great clearness. *Wilcox v. Railroad*, Cir. Ct. of App. Fourth Cir., 52 Fed. Rep. 264; *Crawson v. Tel. Co.*, 47 Fed. Rep. 544; *Chase v. Tel. Co.*, 44 Fed. Rep. 554, where all the authorities are cited; *West v. Tel. Co.*, 39 Kan. 93; *Russell v. Tel. Co.*, 3 Dak. 315; *Tel. Co. v. Rogers*, 68 Miss. 748; *Lynch v. Knight*, 9 House of Lords, 577; *Victoria's Railway Commissioner's v. James Coultas and Mary Coultas*, L. R. 13 App. Cases, 222; *Tyler v. Tel. Co.*, 54 Fed. Rep. 634; *Kester v. Tel. Co.*, Taft, Judge, 55 Fed. Rep. 605.

We are fully aware that the plaintiff's claim appeals strongly to the sensibilities, but to adopt that view we must either be guilty of adopting one rule of damages for one class of common carriers, and the breach of their contracts, or we must conclude that all of our predecessors in the great common law courts were at fault, and henceforth repudiate not only their utterances but our own on this subject, and this we have no inclination to do. We prefer to travel yet awhile *super antiquas vias.*

If, in the evolution of society and the law, this innovation should be deemed necessary, the legislature can be safely trusted to introduce it, with those limitations and safeguards which will be absolutely nec-

·essary, judging from the variety of cases that have sprung up since the promulgation of the Texas case.

Our conclusion is, the judgment should be and is affirmed. All concur.