Cutts, Respondent, vs. The Western Union Telegraph Company, Appellant.

*February 1 — February 28, 1888.*

*Telegraph companies: Negligence: Measure of damages.*

1. Ch. 171, Laws of 1885, renders telegraph companies liable for the damages resulting directly from their negligence in the matter of transmitting messages, especially where their agents are acquainted with the contents and significance of such messages.

2. In an action to recover damages for the delay in the transmission of a telegram, unless the special injury claimed is shown to have resulted from such delay, only the amount paid for the transmission can be recovered.

APPEAL from the Circuit Court for *Winnebago* County.

The plaintiff resides at Oshkosh. The night of Friday, April 23, 1886, at about midnight, he received from the defendant company a telegram from Hurley, Wisconsin, announcing the death of his son at that place, in the words:

"Will died at 6 P. M. What shall we do?" The plaintiff immediately answered: "Will come on first train," and delivered the answer to the agent of the defendant for transmission to Hurley, paying therefor forty cents. Plaintiff thereupon procured a casket, and, taking with him an undertaker, left Oshkosh on the first train for Hurley; arriving there at 6 P. M. on Saturday evening. He found that a coffin had been procured, and the remains of his son placed in it before his arrival, and that the remains were in a bad condition. He paid the person who furnished the coffin five dollars to take it back. He also had the remains embalmed, which cost him $20 more than it would had they been in good condition. The telegram which he had sent did not reach Hurley until about 11 o'clock A. M. on Sunday,— just as he was about leaving with the remains for Oshkosh. The plaintiff's son was an adult, and had been engaged in business at Hurley on his own account. This action was brought to recover damages for the failure to transmit the message from Oshkosh on Friday night. A trial of the action resulted in a verdict for the plaintiff for $25.40 (being the above items). Motion for a new trial was denied, and judgment entered pursuant to the verdict. The defendant appeals from such judgment.

For the appellant there were briefs by *Finch & Barber*, and oral argument by *Mr. Henry Barber*. To the point that a telegraph company is not liable for a special and contingent injury caused by delay in delivering a message when there is nothing in the message indicating that special damage will result from any neglect, they cited *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Baldwin v. U. S. Tel. Co.* 45 N. Y. 744; *Landsberger v. M. Tel. Co.* 32 Barb. 530; *Leonard v. N. Y., A. & B. E. M. Tel. Co.* 41 N. Y. 544; *British Col. S. M. Co. v. Nettleship*, L. R. 3 C. P. 499; *Horne v. Midland R. Co.* 7 id. 590, 8 id. 131; *Cory v. Thames Iron Works Co.* L. R. 3 Q. B. 190; *Simpson v. L. & N. W. Riv. Co.* 1 Q. B. Div. 274;

*Sanders v. Stuart,* 17 Eng. (Moak), 286; *Breese v. U. S. Tel. Co.* 45 Barb. 274; *Belger v. Dinsmore,* 51 N. Y. 166; *Smeed v. Foord,* 1 Ell. & Ell. 616.

For the respondent there was a brief by *John W. Hume* and *George Hilton,* and oral argument by *Gabe Bouck.*

LYON, J.   Ch. 171, Laws of 1885, is as follows: " Any person, association, or corporation operating or owning any telegraph lines doing business in this state shall be liable for all damages occasioned by failure or negligence of their operators, servants, or employees in receiving, copying, transmitting, or delivering dispatches or messages."   Although this statute was referred to by Mr. Justice TAYLOR in *Thompson v. W. U. Tel. Co.* 64 Wis. 537, yet this is the first case subject to that statute which has reached this court.   The case just cited arose before the statute was enacted.   It is claimed by counsel for the plaintiff that the above law renders each telegraph company doing business in this state liable for any and all damages sustained through its negligence in respect to the transmission of messages delivered to it for that purpose, and flowing directly and proximately therefrom, even though the import of the telegram is wholly unknown to the company's agents, as in the case of cipher dispatches not translated to the agent.   We shall not attempt an interpretation of this statute any further than to hold that it does render telegraph companies liable for the damages resulting directly from their negligence in the matter of transmitting messages, especially where, as in this case, the agent of the telegraph company is acquainted with the contents and significance of the message.   It is unnecessary that we should go further in this case.

There is no testimony in the present case showing, or tending to show, when the coffin was procured and the body of the plaintiff's son placed in it, or the cause of the bad condition of the body, or that the circumstances would

have been any different had the message been forwarded to Hurley and received there in proper time. In the absence of proof of those facts, it does not appear that the items of expense to which the plaintiff was subjected on account of the coffin and for embalming the body had any connection whatever with the failure of the defendant to transmit the message in time. Such proof is absolutely essential to a recovery by plaintiff for those expenses. Because of such failure of proof, it was error for the court to submit to the jury the question of the liability of the defendant for those expenses. Under the evidence, the most the plaintiff could recover was the sum he paid the defendant for transmitting the message, which was forty cents. For these reasons the judgment of the county court must be reversed, and the cause will be remanded for a new trial.

*By the Court.*— It is so ordered.